DECISION
Before this Court is an appeal from the Personnel Appeals Board ("Board"), upholding a decision of the Rhode Island Higher Education Assistance Authority ("Authority"). Jurisdiction in this Superior Court is pursuant to G.L. 1956 (1993 Reenactment) § 42-35-1.
I. Facts/Travel
A review of the record, including a transcript from the Board's October 15, 1991 hearing, indicates that the Authority hired Thomas J. Stolasz ("appellant") as a Principal Systems Analyst in May 1984. At the time the appellant was hired, he had over twenty (20) years of service and qualified as a tenured employee pursuant to G. L. 1956 (Reenactment 1992) §§ 36-4-59
and 36-5-7. As Principal Systems Analyst, appellant was responsible for the design and development of computer systems for the Authority, coordination of these systems with the data processing server in Indiana, United Student Aid Fund ("U.S.A.F."), and coordination of the activities for the state computer center. After appellant completed the conversion of the systems with U.S.A.F. in August of 1988, U.S.A.F. began assuming responsibility for a majority of the design work appellant had been hired to do. As a result, appellant's duties and responsibilities decreased significantly.
Thereafter, in August of 1989, the Executive Director of the Authority, Elwood G. Farber ("Farber"), determined that appellant's position was no longer needed and that the Authority "could use the money more efficiently by having a computer programmer." Tr. at 12. On August 15, 1989, Farber sent a letter to the Personnel Administrator, Brad Southworth ("Southworth"), requesting that the appellant's position be abolished. Southworth responded approximately two months later, telling Farber that he could not abolish the position as the administration "had a policy of no lay-offs and no job abolishments". Tr. at 13. Southworth also noted that appellant had attained statutory tenure status and would therefore have to be placed in another position within the state. Id. Southworth stated that there were no vacant, funded positions available at that time and therefore the Authority would have to continue supporting the cost of the position, i.e., appellant's salary and expenses. Id. Southworth advised that appellant should remain in the organization until such time as another vacant, funded position could be found for him within the state government.
Based on Southworth's recommendations, the Authority retained the appellant and developed special assignments for him, although neither party could recall more than two (2) such projects: (1) a study of the then-existing phone system and an analysis of the problems it was having and (2) monitoring the collection systems and the problems it was experiencing. This arrangement continued for approximately eighteen (18) months.
In early 1991, the State of Rhode Island faced a severe financial crisis. The state government asked all state offices to review their operations and expenses as substantial cuts would have to be made in state funding. Tr. at 8. Initially, the Authority was forced to deal with a twenty thousand dollar ($20,000) cut to their budget, which would be applied retroactively for the fiscal year ending 6/30/91. Tr. at 10, 11. In addition, one hundred thousand dollars ($100,000) would be eliminated from the budget for the following fiscal year. Tr. at 7. The Authority determined that the best way to handle the necessary budgetary reductions was to eliminate three (3) positions, including the appellant's, and reallocate those funds. Accordingly, on February 27, 1991, the Authority informed appellant that due to "a severe shortage of funds," he would be laid-off effective March 1991. Farber maintained that if the Authority were to receive additional funding from the State, appellant would be reinstated to his position. Tr. at 14.
On March 1, 1991, appellant filed an appeal of the February 27th lay-off with the Board. Appellant asserted that he had acquired tenure status pursuant to R.I.G.L. §§ 36-4-59 and36-5-7 and was therefore immune from the provisions of R.I.G.L. § 36-4-7. Before ruling on appellant's appeal, the Board asked the appellant, as well as all other interested parties, to submit briefs regarding the effect, if any, of §§ 36-4-59;36-5-7; and 36-5-8 on the State's ability to lay-off employees pursuant to § 36-4-7. On September 10, 1991 the Board issued a preliminary decision concluding that employees who acquire statutory tenure status pursuant to §§ 36-4-59, 36-5-7 and36-5-8 are protected in cases of termination resulting from job abolishment or reorganization and therefore entitled to be retained within the State's services in a position of similar grade. The Board stated, however, that this status did not prevent an employer from laying-off a statutorily protected employee due to a shortage of funds pursuant to § 36-4-7.
The Board then scheduled appellant's case for an October 15, 1991 hearing in order to determine whether the appellant had in fact qualified as a tenured employee and whether the Authority's action constituted a job abolishment or a lay-off resulting from the budgetary shortfall.
At the hearing, both parties stipulated to the fact that appellant had achieved statutory tenure status pursuant to R.I.G.L. §§ 36-4-59 and 36-5-7. The sole issue remaining for the Board was whether the appellant's position had been abolished. Tr. at 28, 29. Farber testified on behalf of the Authority and discussed the agency's original decision to abolish appellant's position and its subsequent decision to retain him. Farber stated that when Southworth informed him that the Authority would continue to be responsible for appellant's salary, he changed his position and decided to keep appellant on and assign him special projects. Tr. at 13, 14 18. Although Farber testified that special projects were developed for the appellant, he could only remember two such projects for the entire eighteen month period. Tr. at 14. Farber stated that the only factor responsible for the Authority's change of heart regarding the need for appellant's position was the information relating to its continued financial responsibility. Tr. at 15, 18. Farber also introduced the Authority's organizational chart which still listed appellant's position as in existence and open.
On January 31, 1992, the Board issued its decision. The Board determined that the appellant had attained statutory tenure status. The Board also stated, however, that the Authority's action was a lay-off resulting from shortage of funds and not an abolishment of his position. The Board concluded that the Authority's actions were not in violation of appellant's statutory rights and therefore unanimously upheld the Authority's decision. The instant appeal timely followed.
Appellant argues that the Board's decision must be vacated and/or remanded due to: (1) an improper application of the lay-off provision which resulted in the Authority violating statutory and constitutional provisions and (2) an erroneous finding by the Board that the Authority's actions constituted a lay-off of the appellant and not an abolition of his position, entitling him to be placed in a comparable position elsewhere in the state government.
II. Standard of Review
The review of a decision of the Commission by this Court is controlled by R.I.G.L. § 42-35-15 (g) which provides for review of a contested agency decision:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Commission's decision. Newport Shipyard v. RhodeIsland Commission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (quoting Caswell v.George Sherman Sand Gravel Co., 120 R.I. 1981,424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency.Berberian v. Dept. of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. CoastalResources Management Council, 434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts.Carmody v. R.I. Conflicts of Interests Commission, 509 A.2d at 458.
III. Statutory Interpretation of the Lay-off Provision
Appellant initially contends that the Board erred in its September 10, 1991 decision when it ruled that employees who attain statutory tenure status pursuant to R.I.G.L. §§ 36-4-59
and 36-5-7 are nevertheless subject to the lay-off provision of § 36-4-37. Rhode Island General Laws §§ 36-4-59 and 36-5-7
both provide that employees in either classified, unclassified or nonclassified positions are deemed to have achieved "full status" upon meeting specified criteria. Section 36-4-59, "Tenure of Incumbents in State Service," confers full status on employees who have completed twenty (20) years, "not necessarily consecutive, of service credit." Section 36-5-7, "State employees-veterans," confers full status on "honorably discharged veteran[s] of the armed services of the United States who have completed fifteen (15) years, "not necessarily consecutive, of service credit." Both of these statutes then contain identical language, which provides, in pertinent part, that the employees:
 shall be deemed to have acquired full status in the subsequent position and shall be protected by the provisions of this chapter, provided, however:
 * * *
 (2) That in the case of the abolition of a position through reorganization or otherwise, the incumbent in such position, otherwise qualified under this section, shall be retained within the state services in a position of similar grade;
 * * *
 (4) That all employees otherwise qualified under this section shall be subject to all the provisions of dismissal and appeal as elsewhere described in the chapter.
Section 36-4-37, "Layoffs-Preference for retention or reemployment," provides that:
 An appointing authority may lay-off a classified employee whenever he or she deems it necessary because of a material change in duties or organization, or shortage or stoppage of work funds. In every case of layoff, the appointing authority shall, before the effective date thereof, give written notice of his or her action to the personnel administrator and the employee and shall certify that consideration has been given to the length and quality of service of all employees in the affected class under his/her jurisdiction. No employee with full status shall be laid off while probational, provisional, or temporary employees are employed by the same appointing authority in the same class of positions; no probationary employee shall be laid off while provisional or temporary employees are employed by the same appointing authority in the same class of positions; nor shall any temporary appointment be made to any position in the class by the appointing authority while any employee who has been laid off by the appointing authority is available for certification from the reemployment list. Any person who has held full status and who has been laid off shall have his or her name placed on the appropriate reemployment list.
In its decision, the Board stated that statutory tenure employees are entitled to heightened protection under the relevant provisions of the statutes and therefore enjoy greater job security than do other non-tenured employees. In cases where such an employee's position has been eliminated subsequent to reorganization or abolishment, the Board noted that the employee is statutorily entitled to be retained within the State's services in a position of similar grade. The Board did not find, however, that this protection extended to situations where the employee was laid-off pursuant to § 36-4-7. Rather, the Board concluded that under a plain reading of the statutes, the State and its agents do have the authority to lay-off a statutory tenure employee due to a shortage of funds. Furthermore, the Board found nothing in the statute to support the conclusion that a lay-off for shortage of funds is the legal equivalent of a job abolition. The Board stated that the language of the statute clearly permits the state to lay-off full status employees for reasons other than reorganization or abolishment of positions. The Board cited R.I.G.L. § 36-4-7, which states in pertinent part: "Any person who has held full status in the classified service and has been laid-off for reasons other than
reorganization or abolishment shall have his or her name placed on an appropriate reemployment list as of the date of his/her termination." (Emphasis added.)
In support of his position, appellant advances several arguments. First, appellant argues that the Board's application of the lay-off statute was improper and that the tenure provisions exclusively govern this dispute. Appellant contends that in applying the lay-off provision to tenured employees, the Board is effectively treating a non-probationary state employee with as little as six (6) months experience the same as an employee who has achieved tenure status pursuant to the statutes, thereby violating the spirit of the merit system statutes and thwarting their purpose. Appellant further argues that the legislature was clear in enumerating which provisions of the merit system apply to employees with statutory tenure status: appeals and dismissal, "conspicuously" leaving out lay-offs. Appellant interprets this to mean that all other sections, including the lay-off provision, are excluded.
"In construing a statute, our task is to effectuate the intent of the legislature." D'Ambra v. North Providence SchoolCommittee, 601 A.2d 1370, 1374 (R.I. 1992) (quoting R.I. StateLabor Relations Board v. Valley Falls Fire District,505 A.2d 1170, 1171 (R.I. 1986)). This is accomplished from an examination of the "language, nature, and object of the statute." D'Ambra, 601 A.2d at 1374 (quoting Lake v. State, 507 A.2d 1349, 1351 (R.I. 1986)). Absent a contrary intent, the words in the statute must be given their plain and ordinary meaning. Id. Furthermore, in construing the statute, the court must adopt a construction that does not affect an absurd result. D'Ambra, 601 A.2d at 1374 (quoting R.I. State Labor Relations Board, 505 A.2d at 1171)). When a court is called upon to construe the provisions of coexisting statutes, the court must follow the rule of statutory construction that provides that statutes relating to the same or similar subject matter should be construed such that they will harmonize with each other and be consistent with their general scope. Blanchette v. Stone, 591 A.2d 785, 786 (R.I. 1991). Viewing the statutes in this context, while keeping in mind the constraints imposed by the limited scope of review, this Court cannot say, as a matter of law, that the Board's interpretation of the statute was erroneous.
A careful reading of the statutes, including respective legislative histories, indicate that the tenure statutes afford a heightened degree of job protection to qualified employees. In the case of abolishment or reorganization, it is mandated that a comparable position elsewhere within State government be found. Furthermore, an employee who qualifies under either of these statutes is not required to take and pass a civil service exam for the position that he/she holds. These statutes, however, do not preclude any action, barring dismissal for cause, with regards to tenured employees. See R.I.G.L. §§ 36-4-59 and36-5-7. The tenure statutes, as they existed at the time of the Authority's action, are completely devoid of any language which expressly provide for protection of tenured employees in the case of lay-offs. Id. Had the legislature wanted to afford such protection, it would have included the appropriate language in the statute. It did not, therefore no such protection exists. SeeMurphy v. Murphy, 471 A.2d 619, 622 (R.I. 1984); Kirby v.Planning Board of Review, 634 A.2d 285, 290 (R.I. 1993).
Furthermore, "full status" employees, as defined by the tenure statutes, are not the equivalent of a non-probationary employee with as little as six (6) months experience. Section36-4-37 establishes a hierarchal system to be used in implementing any lay-offs pursuant to the statute. This system expressly provides that "full status" employees are to be discharged only after all temporary, provisional and probationary employees are discharged. Furthermore, it mandates that consideration be given to the length and quality of service of all employees. Pursuant to the statute, a tenured employee will necessarily receive heightened protection under the lay-off provision simply by virtue of the number of years he/she has served.
Appellant also argues that the 1992 amended versions of the various tenure statutes should apply to the current action. Appellant contends that the amendments, which give statutorily tenured employees the same protection in the case of a lay-off as that afforded in the case of abolishment, i.e. bumping rights, succeeded the statewide lay-offs in 1991 and should thereby be construed as an attempt by the legislature to clarify the law rather than change it. In appellant's view, this provides further evidence of the legislature's intention to exclude statutorily tenured employees from the provisions of § 36-4-7.
It is well established "that statutes and their amendments are presumed to apply prospectively." Hydro-Manufacturing, Inc.v. Kayser-Roth Corp., 640 A.2d 950, 954 (R.I. 1994); Lawrence v.Anheuser-Busch, Inc., 523 A.2d 864, 869 (R.I. 1987). Only when it appears by clear, strong language or by necessary implication that the legislature intended a statute to have retroactive application will the courts apply it retrospectively.Hydro-Manufacturing, 640 A.2d at 955; VanMarter v. Royal IndemnityCo., 556 A.2d 41, 44 (R.I. 1989). In this case, there is neither language nor intent to support appellant's contention that the statute should be applied retroactively. In fact, the Legislature expressly provided that the statute was to "take effect on passage". P.L. 1992, ch. 366, sec. 1. See Hydro-Manufacturing at 955. In the absence of any evidence to the contrary, the statute must be applied prospectively. Therefore, because this Court finds that the Board's interpretation of the statutes is not clearly erroneous, this Court must defer to the Board's interpretation of the statutes.
IV. Abolition of Appellant's Position
Appellant furthers asserts that there is insufficient evidence to support the Board's decision that the Authority's actions constituted a lay-off rather than an abolition of the position. In so deciding, the Board stated that the Authority reconsidered its desire to abolish appellant's position when it determined that it would continue to be responsible for appellant's salary, even if the position were abolished. The Board noted that at the time of the appeal, the position remained "open" on the Authority's organizational chart. Furthermore, the Board stated that an abolition must comply with the procedures set forth in R.I.G.L. § 36-4-10, and that none of these procedures was followed.
Appellant asserts, however, that the Board's actions unequivocally amount to an abolition as his position was effectively eliminated, rather than vacated for a temporary period of time due to a shortage of funds. The Authority argues that its action is temporary in nature; if more funds become available, the plaintiff will be rehired. Therefore, the Authority avers that the Board correctly classified their actions as a lay-off due to a shortage of funds rather than an abolishment of the position.
When reviewing the findings of fact of an administrative agency, the court is limited by a stringent standard of review. The court will reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record. Milardo v. Coastal ResourcesManagement Council, 434 A.2d 266, 272 (R.I. 1981). "If competent evidence exists on the record considered as a whole, the court is required to uphold the agency's conclusions." EnvironmentalScientific Corp. v. Durfee, 621 A.2d 200, 208 (R.I. 1993). The court is mindful, however, that the deference due to an agency interpretation of its governing statutes and regulations is far from blind allegiance. See Citizens Savings Bank v. Bell,655 F. Supp. 1033, 1042 (1985). If there is no substantial evidence to support the agency's decision, the court can reverse or remand the decision with further instructions.
A "lay-off" is defined as a cessation of employment and is usually temporary in nature. The New Webster EncyclopedicDictionary (1984). On the other hand, to "abolish" something means to do away with wholly or destroy completely. Id.
Consequently, abolishment connotes something more permanent in nature. Relevant case law further supports this distinction. SeeCasey v. Sundlun, 625 A.2d 481, 482 (R.I. 1992) (subsection (2) of § 36-5-7 protects state employees where an entire job is eliminated); Howie v. Stackhouse, 392 N.E.2d 1081 (Ohio 1977) (job abolishment contemplates permanent elimination of a particular position; layoff contemplates retention of position vacated temporarily by shortage of work or funds).
After careful review, this Court finds that the Board's finding that the appellant was laid-off is supported by reliable, substantial evidence. The Board found that appellant had been laid off exclusively because of the Authority's financial condition and that his position remains open but not filled and that he would be rehired if the funds were available to pay him. Accordingly, the Board concluded that the appellant had been laid off from his position. As this finding of fact is not clearly erroneous in light of the reliable, probative and substantial evidence, this Court will not reweigh the evidence or substitute its judgment for that of the Board on this question of fact.Newport Shipyard, 484 A.2d at 898.
The Authority also argues that the required procedures for abolishing a position, as established in R.I.G.L. § 36-4-10, were not followed and therefore the Board is precluded from finding that the position is abolished. Section 36-4-10, "Change in plan-Notice of establishment of new positions," states, in pertinent part:
 Additional classes may be established and existing classes may be divided, combined, altered, or abolished upon recommendation of the personnel administrator, recommendation by the director after public hearing, and approval by the governor. This action may be initiated either by the personnel administrator, the director or on request of an appointing authority. (Emphasis added.)
The intention of the legislature controls our consideration of the mandatory and discretionary character of statutory provisions. Roadway Express, Inc. v. R.I. Commission for HumanRights, 416 A.2d 673, 674 (R.I. 1980). Under the traditional rules of statutory construction, a statute imposing a positive duty on a public officer will be considered mandatory, regardless of the language utilized. 67 C.J.S. Officers § 200 (1978).
Turning to the present case, it is clear from the language of the statute that the Authority had the responsibility for complying with the requisite procedure. This action had to be initiated either by the personnel administrator, the director or on request of an appointing authority. The procedures outlined in R.I.G.L. 36-4-10 are mandatory and cannot summarily be ignored. Because this procedure was not followed, appellant's position effectively was vacated, not abolished, and he is therefore not entitled to the protections afforded pursuant to §§ 36-4-59
and 36-5-7.
After careful review of the entire record, this Court concludes that the decision of the Board finding that the Authority laid-off the appellant rather than abolished his position is supported by reliable, substantial evidence.
Counsel should submit the appropriate judgement for entry.